IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3244-F

| | |
|---|---|
| ROYLIN JUNIUS BEALE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DEPUTY J.P. MADIGAN, *et al.*, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court upon Defendants' motion for summary judgment [DE-65] and Plaintiff's motion to stay [DE-90]. For the following reasons, Defendants' motion for summary judgment [DE-65] is ALLOWED and Plaintiff's motion to stay [DE-90] is DENIED AS MOOT.

## I. Procedural Background

On November 29, 2011, Plaintiff, a federal inmate proceeding pro se, filed this action under 42 U.S.C. § 1983, alleging excessive use of force against him while he was detained at the Pitt County Detention Center ("Pitt"). Compl. [DE-1], p. 4. He also asserted that Defendants were deliberately indifferent to the serious injuries he suffered as a result of this use of force. Id. On April 23, 2012 [DE-6], the court determined that Plaintiff's complaint survived frivolity review. Plaintiff filed a motion to amend his complaint [DE-12] on June 6, 2012 and a motion for default judgment on August 29, 2012 [DE-13]. The court allowed Plaintiff's motion to amend and denied his motion for default judgment on October 25, 2012 [DE-15]. Plaintiff filed an amended complaint on November 13, 2012 [DE-16]. Each Defendant answered [DE-35] Plaintiff's complaint and

Defendant Phillips filed a motion to dismiss [DE-36] on February 4, 2013. Plaintiff filed a motion to appoint counsel [DE-39] on February 4, 2013. The court allowed Defendant Phillips' motion to dismiss and denied Plaintiff's motion to appoint counsel on April 30, 2013 [DE-48].

Plaintiff filed a second motion to amend his complaint on October 24, 2013 [DE-61], and he renewed this request on December 9, 2013 [DE-82]. Specifically, Plaintiff sought to amend his complaint based on "new information . . . presented by and through defendants' production of documents." [DE-61]. The instant motion for summary judgment was filed on December 9, 2013 [DE-65]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Plaintiff about the motion, the consequences of failing to respond, and the response deadline. Roseboro Notice, [DE-83]. On December 20, 2013, Plaintiff's motions to amend [DE-61, 82] were allowed. *See* December 20, 2013 Order [DE-84]. Plaintiff responded to the instant motion for summary judgment on December 30, 2013 [DE-87], and Defendants filed a reply on January 13, 2014 [DE-88]. Plaintiff amended his complaint on January 13, 2014. *See* Second Am. Compl. [DE-89]. The second amended complaint reiterates the claims addressed by the instant motion for summary judgment, and adds "Officer Corprew" as a Defendant. Id. at pp. 4-5. Finally, Plaintiff also filed the instant motion to stay [DE-90] on January 13, 2014. In the motion to stay, Plaintiff requests that a ruling on the instant motion for summary judgment be stayed "until [his] amended complaint clears the frivolity review." Id.

## II. Factual Background

Plaintiff contends that "[o]n [February 19, 2011] at approximately 12:30 a.m. [he] was brought into [Pitt] by" Defendant Madigan. Second Am. Compl. [DE-89], p. 4. He was handcuffed behind his back. Id. Shortly after he arrived at Pitt, he "engaged in a verbal confrontation [with

2

Defendant Harless] that led to . . . [Defendant Harless] becoming angered and attempting to force [Plaintiff] . . . to sit." Id. Plaintiff refused to sit, and attempted to escape Defendant Harless' grasp. Id. Defendant Harless then requested assistance from Defendants Blow, Corprew and Peele. Id. Plaintiff alleges that he was "savagely drag[ged]" into an inmate dressing room. Id. In the inmate dressing room, Plaintiff was "tased and aggressively slammed on [his] face." Id. at pp. 4-5. Specifically, Plaintiff asserts that Defendant Madigan tased him in excess of 25 seconds. Id. at p. 5. Plaintiff further contends that no other Defendant "attempted to intervene" while he was being tased. Id. After being tased, Plaintiff fell unconscious, and the Defendants then undressed Plaintiff. Id. Defendants did not immediately "seek . . . the aid of [a] nurse" when Plaintiff fell unconscious. Id. Finally, Plaintiff alleges that he "remember[s] waking up with an ammonia stick being broken under [his] nose." Id.

Defendants' summary judgment materials elaborate upon Plaintiff's allegations.[1] Specifically, on February 19, 2011, Defendant Madigan arrived at a private residence after receiving a report that Plaintiff was intoxicated and communicating threats. Madigan Aff. [DE-66], p. 2. When Defendant Madigan arrived, Plaintiff was standing near a stolen vehicle. Id. Plaintiff's hands were bleeding, and there was broken glass on the driver's side of the stolen vehicle. Id. Prior to Defendant Madigan's arrival, Plaintiff threatened to shoot one bystander. Id. Likewise, after Defendant Madigan arrived, Plaintiff was "ranting and raving and cursing at everyone on scene throughout the event." Id. at p. 3.

When Defendant Madigan attempted to arrest Plaintiff, Plaintiff became verbally abusive and resisted arrest. Id. Despite Plaintiff's resistance, Defendant Madigan was eventually able to push

---

[1] Defendants' allegations do not create any genuine issue of material fact.

3

Plaintiff into his patrol car. Id. During the drive to Pitt, Plaintiff "continued his verbal tirade" and was verbally abusive toward Defendant Madigan. Id. When Plaintiff arrived at Pitt,[2] he refused to sit when directed. Id. Eventually, after Plaintiff's continued refusal to sit, Defendant Madigan placed downward pressure on Plaintiff's shoulders forcing him to sit. Id. While waiting for a magistrate to issue an arrest warrant, Plaintiff continued to verbally harass Defendant Madigan. Id.

The magistrate issued warrants for felony larceny of a motor vehicle and felony possession of stolen property. Id. Plaintiff thereafter refused to move claiming continuously he was entitled to his "phone calls." Id. He also threatened Defendant Madigan stating, "I will murder you." Id. Likewise, Plaintiff told Defendant Madigan that he would fight, kick, bite or head butt other officers during the booking process. Id.; Harless Aff. [DE-67], p. 3. He also told Defendant Harless that "he would bite [Defendant Harless'] neck and watch [him] bleed out." Harless Aff. [DE-67], p. 3. Plaintiff continued to stand when instructed to sit, and "made violent sudden body movements toward [Defendant Madigan] and [Defendant Harless] multiple times while making . . . threats." Madigan Aff. [DE-66], p. 3. Plaintiff also repeatedly stated that he would become violent if his handcuffs were removed. Harless Aff. [DE-67], p. 3; Peele Aff. [DE-68], p. 2.

Based on these threats, Defendant Madigan requested assistance while booking Plaintiff. Madigan Aff. [DE-66], p. 4. Defendants Blow, Corprew, and Peele escorted Plaintiff to a dressing room, and Defendants Harless and Madigan followed behind to offer assistance. Id. While he was being escorted to the dressing room, Plaintiff resisted "by becoming dead weight and pushing against" Defendants. Harless Aff. [DE-67], p. 3. He also continued to threaten Defendants. Madigan

---

[2] Plaintiff has been incarcerated at Pitt 26 times. See Blow Aff. [DE-69], p. 2. He has received several inmate tickets for failing to show proper respect to staff. Id. In addition, Plaintiff is a current, high ranking member of a well-known local gang. Id.

4

Aff. [DE-66], p. 4. The Defendants attempted calm Plaintiff, but he remained agitated. Id. Plaintiff was instructed to remove his shoes and did not comply. Harless Aff. [DE-67], p. 4. Rather, Plaintiff became "aggressive [and] . . . attempt[ed] to assault [Defendants]." Harless Aff. [DE-67], p. 4. He also "started to actively resist [Defendants] by pushing and shoving . . . them and refusing to comply with directions." Madigan Aff. [DE-66], p. 4. Specifically, Plaintiff "started swinging his arms and shoulders violently." Peele Aff. [DE-68], p. 2. This action "turned [Defendant] Corprew and [Defendant Peele] around," and Plaintiff continued "swinging his self around." Id. Plaintiff then began "actively fighting" Defendants and Defendant Corprew "appeared to [lose] his balance." Madigan Aff. [DE-66], p. 4. Defendant Corprew and Defendant Peele struggled with Plaintiff for several seconds, but they were unable "to stop [Plaintiff] from swinging around." Peel Aff. [DE-68], p. 2. Plaintiff "started kicking and [Defendant Harless] attempted to grab [Plaintiff's] leg and get him to the ground." Harless Aff. [DE-67], p. 4. However, the attempt to wrestle Plaintiff to the ground was unsuccessful "due to how violently he was resisting." Id.

Defendant Madigan believed that the other Defendants were not "in control at that time." Madigan Aff. [DE-66], p. 4. Based on this determination, Madigan discharged his taser, with the probes impacting Plaintiff's chest. Id. However, a connection was not established, and the taser was ineffective. Harless Aff. [DE-67], p. 4. After the taser was ineffectively deployed, Plaintiff "was still actively resisting and was commanded to stop resisting." Id. Because Plaintiff continued to resist, Defendant Madigan placed the taser in direct contact with Plaintiff's calf. Madigan Aff. [DE-66], p. 4. Defendant Madigan's second use of his taser rendered Plaintiff unconscious, and Defendant

5

Madigan "removed the [taser] shortly." Id. Plaintiff was then undressed.[3] Harless Aff. [DE-67], p. 4.

It was later determined that Plaintiff sustained a small cut below his left eye during this altercation. Peele Aff. [DE-68], p. 3. Defendants "notified the medical department" after Plaintiff was tased.[4] Blow Aff. [DE-69], p. 2. A nurse examined Plaintiff and took his vital signs, which were normal. Id. at p. 3. Plaintiff had not sustained any serious injuries. Corprew Aff. [DE-70], p. 3. The nurse then put an ammonia capsule to Plaintiff's nose and Plaintiff started to respond after several minutes. Peele Aff. [DE-68], p. 3. When he awoke, Plaintiff was irate and again began threatening Defendants. Id. He also told the nurse to "take [her] . . . hands off of [him]." Corprew Aff. [DE-70], p. 3. The examining nurse was instructed to leave the room for her safety. Id. Plaintiff was put on a suicide watch by the examining nurse, placed in a suicide smock, and escorted to his cell block. Moore Aff. [DE-76], p. 1. Plaintiff continued to threaten the staff at Pitt while he was being escorted. Id.

While walking to his cellblock, still handcuffed, Plaintiff unexpectedly threw his head forward and struck Officer Roger Wainwright in the head with his forehead. Id. at p. 2. Officer Wainwright bled profusely and was transported to a hospital. Perry Aff. [DE-79], p. 3. Plaintiff immediately bragged that he had injured Officer Wainwright and accomplished what he had been threatening. Peele Aff. [DE-68], p. 3. Plaintiff thereafter refused to allow officers to remove his handcuffs. Stokes Aff. [DE-73], p. 3. Due to the nature of his assault and his violent history, Plaintiff

---

[3] While Plaintiff was being undressed, Defendants "found a plastic baggy of white powdered substance consistent with cocaine and a small straw." Harless Aff. [DE-67], p. 4.

[4] Plaintiff arrived at Pitt at approximately 3:50 a.m., and the medical department was notified at 4:15 a.m. Blow Aff. [DE-69].

6

was placed in administrative segregation. Id.

## III. Analysis

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

### A. Excessive Force

Excessive force claims raised by pretrial detainees[5] are governed by the Due Process Clause of the Fourteenth Amendment. Orem v. Rephann, 523 F.3d 442, 446 (4th Cir.2008). Contrary to a Fourth Amendment excessive force claim that employs an objective reasonableness standard, the subjective motivations of the individual officers allegedly exerting unlawful force is pertinent in a

---

[5] Because the incidents of Plaintiff's arrest were complete when the force was applied, Plaintiff was a pretrial detainee, and the incident is governed by governed by the Due Process Clause of the Fourteenth Amendment. Young v. Prince George's Cnty., Md., 355 F.3d 751, 758 (4th Cir. 2004); Robles v. Prince George's Cnty., 302 F.3d 262, 268 (4th Cir. 2002)

7

substantive Due Process claim. See Young v. Prince George's Cnty., 355 F.3d 751, 758 (4th Cir.2004). To state an excessive force claim, pretrial detainee must show that the defendant "inflicted unnecessary and wanton pain and suffering." Carr v. Deeds, 453 F.3d 593, 605 (4th Cir. 2006). The proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. Sawyer v. Asbury, 537 F. App'x 283, 290 (4th Cir. 2013) (quotation omitted). "Moreover, no particular extent of physical injury is required to establish an excessive force claim." Id. When evaluating whether the use of force was wanton or unnecessary, a court considers: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the officials; and (4) any efforts made to temper the severity of a forceful response. Whitley v. Albers, 475 U.S. 312, 321 (1986); see, e.g., Wilkins v. Gaddy, 559 U.S. 34 (2010); Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Here, Defendants' use of force was not wanton or unnecessary. First, the use of force was a good faith effort to maintain or restore discipline. Plaintiff was intoxicated and belligerent even prior to his arrest. Madigan Aff. [DE-66], p. 2. He had consistently threatened Defendants and disobeyed their instructions throughout this incident.[6] Blow Aff. [DE-69], p. 2. Just prior to his tasing, Plaintiff was again disobeying orders. Madigan Aff. [DE-66], p. 4. He also was swinging his body around violently and resisting Defendants' attempts to control him. Peele Aff. [DE-68], p. 2. Ultimately, Defendant Corprew lost his balance and Defendant Madigan determined that Defendants were not "in control at that time." Madigan Aff. [DE-66], p. 4. In sum, despite Plaintiff being handcuffed,

---

[6] Words alone, however, do not justify the excessive use of force against a pretrial detainee. United States v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990). Here, however, Plaintiff's verbal threats were accompanied by physical action on several occasions.

8

Defendants had nonetheless lost control of the situation, and an application of force was needed.

Likewise, the relationship between the need to use force and the amount of force used was reasonable. Although Plaintiff was tased more than once, this was only done because the initial tasing was ineffective and Plaintiff continued to resist. Harless Aff. [DE-67], p. 4. Defendant Madigan removed the taser shortly after Plaintiff was rendered unconscious. Madigan Aff. [DE-66], p. 4. Defendants also ensured that Plaintiff received medical attention after the tasing was administered. Blow Aff. [DE-69], p. 2 . Moreover, Plaintiff does not allege any serious injuries as a result of the force applied.[7]

In addition, Defendants reasonably perceived Plaintiff as a threat. Plaintiff: (1) was a known gang member; (2) had been detained numerous times at Pitt; and (3) had a history of being disrespectful to staff. Blow Aff. [DE-69], p. 2. Furthermore, Plaintiff had consistently expressed an intent to injure Defendants if given an opportunity. Madigan Aff. [DE-66], p. 3; Harless Aff. [DE-67], p. 3; Peele Aff. [DE-68], p. 2. Indeed, Plaintiff ultimately demonstrated that he was capable of inflicting injury despite being handcuffed. Moore Aff. [DE-76], p. 1.

Furthermore, Defendants made several efforts to temper the severity of their response. Plaintiff consistently disregarded numerous verbal instructions before any force was applied. Madigan Aff. [DE-66], pp. 2-4. Prior to the tasing, Defendants attempted to use less drastic measures, such as: (1) pushing Plaintiff into a patrol car; (2) placing downward pressure on Plaintiff's shoulders forcing him to sit; (3) attempting to calm Plaintiff after he became agitated; and

---

[7] Although, no particular extent of physical injury is required to establish an excessive force claim, Plaintiff's lack of serious injury nonetheless tends to demonstrate that Defendants implemented only the force needed to restore order. Likewise, the medical attention Plaintiff received soon after the tasing in indicates that this was not a wanton or unnecessary use of force.

9

(4) attempting to wrestle Plaintiff to the ground to restore order. Madigan Aff. [DE-66], pp. 2-4; Harless Aff. [DE-67], p. 4. Likewise, after the taser was ineffectively deployed, Plaintiff was not immediately tased again, but rather was "commanded to stop resisting." Harless Aff. [DE-67], p. 4. He was only tased again because he continued to resist. Madigan Aff. [DE-66], p. 4.

Finally, the court has considered Orem v. Rephann, 523 F.3d 442 (4th Cir. 2008), and finds it distinguishable. In Orem, while police officers were transporting a handcuffed arrestee to jail, the arrestee "yelled, cursed and banged her head against the police car window . . . . Her jumping and banging around in the back of the vehicle was so intense that the vehicle rocked." Id. at 444. An officer opened the door of the vehicle and repeatedly instructed the arrestee to " 'calm down' " and to " 'stop it,' " and admonished the arrestee "to respect" the officers. Id. at 444-45. The arrestee directed profanity at the officer, who stated, " 'I'm telling you, you'd better stop it,' " and then "shocked [the arrestee] twice with a taser gun—underneath her left breast and on her inner thigh." Id. at 445. At the time, the arrestee was in handcuffs and foot restraints. Id. at 443. The district court rejected the officer's claim that "his use of the taser gun was not excessive because the arrestee was unruly and uncooperative" and denied summary judgment on the arrestee's Fourteenth Amendment excessive force claim. Id. at 446. The Orem court affirmed. Id. at 448-49.

Here, both Plaintiff and the Orem arrestee were handcuffed. However, the Orem arrestee weighed only 100 pounds, while Plaintiff was clearly strong enough to resist Defendants even while handcuffed. Likewise, as previously noted, Plaintiff demonstrated that he was capable of inflicting injury despite being restrained. Furthermore, the Orem arrestee was locked in the back seat of a car, while Plaintiff was in a detention center and swinging his body wildly in an attempt to disobey instructions. See Simpson v. Kapeluck, CIV.A.209CV00021, 2010 WL 1981099 (S.D.W. Va. May

10

14, 2010) aff'd, 402 F. App'x 803 (4th Cir. 2010) (noting that "[u]nlike Orem in the back seat cage, plaintiff was in an open space, and his outburst and accompanying jerking and kicking posed a greater threat to the officers and any surrounding individuals"). While the Orem arrestee was tased as a result of using a profanity, Plaintiff was tased because his physical actions caused Defendants to lose control of the situation. For these reason, Orem is not directly applicable.

Therefore, the court finds that Defendants' use of force was not wanton or unnecessary. See Simpson, 2010 WL 1981099, at *8 (finding defendants entitled to summary judgment in Fourteenth Amendment excessive force claim involving taser where officer tased plaintiff as he was being escorted out of courtroom in shackles and handcuffs after he struggled against the officers). Accordingly, Plaintiff's excessive force claim is DISMISSED.

## B. Deliberate Indifference

To state a section 1983 claim for inadequate medical care, a state pretrial detainee must show deliberate indifference to his or her serious medical needs in violation of his Fourteenth Amendment due process rights. See, e.g., Bell v. Wolfish, 441 U.S. at 535 n. 16; Estelle v. Gamble, 429 U.S. 97, 104 (1976); Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir.2001); Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir.1992). In order to prove such a claim, Plaintiff "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, 429 U.S. at 105. A prisoner is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere

11

negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105-06.

Plaintiff has not established a claim for deliberate indifference to a serious medical need. First, he does not allege a serious medical need. "A condition is sufficiently serious to merit constitutional protection if it is a condition of urgency, one that may produce death, degeneration, or extreme pain." Shydiq v. Harler, No. 1:11CV394 GBL/TCB, 2012 WL 488264, at * 5 (E.D. Va. Feb. 13, 2012). Here, Plaintiff was rendered unconscious by a tasing and suffered a cut under his left eye. The tasing was discontinued shortly after Plaintiff was rendered unconscious, and the cut under his eye was "about a quarter of inch in length." Blow Aff. [DE-69], p. 3. Plaintiff was examined by a nurse "and everything appeared to be normal." Id. Thus, Plaintiff's injuries were not serious.

Regardless, even if these were serious injuries, Plaintiff received medical attention shortly after this use of force. Id. A detainee is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the detainee. Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir.1977). For these reasons, Plaintiff deliberate indifference claim is DISMISSED.

## IV. Conclusion

For the aforementioned reasons, Defendants' motion for summary judgment [DE-65] is ALLOWED and Plaintiff's motion to stay [DE-90] is DENIED AS MOOT. The Clerk of Court is DIRECTED to close this case.

12

SO ORDERED. This the 26 day of August, 2014.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

13